(95 South. 805)

No. 25751.

## STATE v. DE VERGES.

(Feb. 26, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Licenses ⬤⇒5—Statute regulating profession of public accounting within power of Legislature.**

The Legislature has power to regulate profession of public accounting by punishing unauthorized person representing himself as having received a certificate, or practicing as a certified public accountant, or using abbreviations or words indicating that he is such, as is done by Act No. 125 of 1908, § 8.

**2. Licenses ⬤⇒5—Legislature may protect public against ignorance, incompetence, and fraud in trades and professions.**

The state·may act when the general welfare requires protection of the public against ignorance, incompetence, and fraud in skilled trades and professions,·though morals, health, or safety are not jeopardized.

**3. Licenses ⬤⇒7(6) — Statute regulating accountants held not to discriminate between residents and nonresidents.**

Act No. 125 of 1908, § 4, authorizing state board of accountants to charge fee not exceeding $25, but limiting the fee to $10 for 90 days, does not discriminate between residents and nonresidents, though section 5 provides fee of $25 for nonresidents granted certificate without examination.

**4. Licenses ⬤⇒21 — Board of accountants charged with duty of ascertaining qualifications of applicants licensed in another state.**

Under Act No. 125 of 1908, § 5, authorizing board of accountants to register accountant's certificate issued in another state, and to issue certificate to holder, the board is charged with the duty of ascertaining the qualifications of such applicants, dependent upon the system or method of testing such qualifications.

**5. Constitutional law ⬤⇒64—Licenses ⬤⇒7(1) —Statute not unconstitutional because intrusting matters to decision of board of accountants.**

Act No. 125 of 1908, is not unconstitutional, because it leaves to board of accountants the decision of the qualifications of applicants holding certificates issued in other states, or because section 3 permits examination of appli-cants on branches of knowedge in addition to those specified.

**6. Licenses ⬤⇒22—Recourse to courts authorized, if board of accountants requires examination on wholly foreign subjects.**

Under Act No. 125 of 1908, § 3, permitting board of accountants to examine applicants for certificates on other branches of knowledge than those named, if it requires examination on subjects entirely foreign to the profession, applicant has recourse to the courts for relief.

**7. Licenses ⬤⇒22—Additional subjects of examination must apply to all applicants.**

Under Act No. 125 of 1908, § 3, authorizing board of accountants to examine applicants for certificates on other branches. of knowledge than those named, such additional subjects must be applicable to all applicants.

**8. Licenses ⬤⇒1—Statute held not to permit collection of fees for private benefit.**

Under Act No. 125 of 1908, the fees to be paid by applicants for certificates as public accountants are intended to cover the expense of making the law effective, and are not a tax or contribution for the benefit of private persons.

O'Niell, C. J., dissenting in part.

Appeal from Criminal District Court, Parish of Orleans; Richard A. Dowling, Judge.

Criminal prosecution by the State against Ed J. de Verges. From a judgment sustaining a demurrer, the State appeals. Judgment annulled and set aside, and case remanded.

A. V. Coco, Atty. Gen., R. H. Marr, Dist. Atty., and Thos. V. Craven, Asst. Dist. Atty., both of New Orleans (T. S. Walmsley, of New Orleans, of counsel, and Sanders, Baldwin, Viosca & Haspel, of New Orleans, amici curiæ), for the State.

John J. Darrieux and Wm. R. Kinsella, both of New Orleans (Azzo J. Plough, of New Orleans, amicus curiæ), for appellee.

Statement of the Case.

DAWKINS, J. Defendant was charged in a bill of information, under two counts, with, first, unlawfully holding himself out to the public as having received a certificate from

the state board of accountants to practice as an expert accountant; and, second, of having practiced as a certified public accountant and using the abbreviation "C. P. A.," to indicate that he was such, without first having obtained the certificate required by Act 125 of 1908.

Defendant demurred to the charge upon the following grounds:

(1) That Act 125 of 1908 violates article 155 of the Constitution of 1898, in that it does not grade the offense.

(2) That said act contravenes section 4 of article 4 of the Constitution of 1921, in that it is a special law regulating labor, and discriminates against all except certain people of a given class, and gives to certain persons arbitrary power, permitting them to collect fees for their own benefit, which are not paid into the state treasury.

(3) That it deprives defendant of his liberty without due process of law.

The lower judge overruled the first ground of the demurrer, but sustained the second, held Act 125 of 1908 unconstitutional, and discharged the accused. Nothing was said about the third ground.

The state has appealed.

### Opinion.

The title of Act 125 of 1908 reads as follows:

"An act to regulate the practice of public accounting by establishing a state board of accountants, fixing its fees and emoluments; to prohibit the unlawful use of words, letters or other means of identification, by unauthorized persons, as certified public accountants under this act, and to provide penalties for the violation of its provisions."

The section defining the offense, and under which accused was charged, is as follows, to-wit:

"Sec. 8. * * * That if any person shall represent himself to the public as having received a certificate as provided in this act, or who shall assume to practice as a certified public accountant, or use the abbreviation 'C. P. A.' or any similar words or letters to indicate that the person using the same is a certified public accountant, without having received a registration certificate, as provided in this act, or if any person having received a certificate, as provided in this act and having thereafter lost such certificate by revocation as provided in section VII, shall continue to practice as a certified public accountant, he shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than one hundred dollars ($100), or sentenced to serve three (3) months in jail for each offense."

[1, 2] It is important to note that the law does not purport to prevent or punish the practicing of accountancy without a license or certificate from the board, but only the holding of one's self out to the public as possessing the certificate which it is authorized to issue under the provisions of the act, the practicing as a certified public accountant, and the using of the abbreviation "C. P. A.," or similar letters of designation to deceive the public into believing that the person so acting is a certified public accountant under the law, without first undergoing the examination by the state board of accountants as required by said statute, and otherwise complying therewith. In other words, any one is at liberty to practice as an accountant, notwithstanding this law, so long as he does not represent himself to be a certified public accountant, as defined thereby, or use the abbreviation "C. P. A." or similar letters or device to indicate that he is a certified public accountant.

It is true that neither morals, health, nor safety of any one is jeopardized by the practicing of this profession, however incompetent a person may be, but the power of the state in matters of this sort is not confined to professions involving such consequences. It may also act whenever the general welfare requires to protect the public in the skilled trades and professions against ignorance, incompetence, and fraud.

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may, in many respects, be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation." Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Cargile v. Minnesota, 180 U. S. 452, 21 Sup. Ct. 423, 45 L. Ed. 619; Freund on Police Power, §§ 493, 495; C., B. & Q. Ry. Co. v. Illinois ex rel. Grimwood, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; State v. St. Louis, etc., Ry. Co., 138 La. 721, 70 South. 621.

153 La.—12

We think, therefore, that the Legislature, in the public interest and for the general welfare, unquestionably had and has the power to regulate the highly skilled and technical profession of public accounting in the measure which it did.

[3] Defendant also contends that the act discriminates between persons of the same class, in that it allows all who applied for examination within 90 days after its passage to do so upon a payment of a fee not to exceed $10, while the maximum was fixed at $25. The provision in question is as follows:

"Sec. 4. * * * that the Louisiana state board of accountants shall be authorized to charge each applicant for a certificate a fee, not to exceed twenty-five dollars ($25) same to be paid when application is filed, except that the fee for each application filed within ninety (90) days after the passage of this act shall not exceed ten dollars ($10)."

It is said that this section permitted the board to charge resident applicants not more than $10 within that period, while, under section 5, it might charge nonresidents $25. However, we find nothing in section 4, just quoted, to justify that position. Nothing is said about the residence of the applicant, but, unquestionably any one, whether resident or nonresident, who had made application within that time and stood the required examination, would not have been required to pay more than $10. It is only applicants from other states who are permitted to register without examination who are required to pay not exceeding $25, as will be seen from section 5, reading as follows:

"That the Louisiana state board of accountants may in its discretion register the certificates of any certified public accountant, who is the lawful holder of a certified public accountant's certificate issued under the law of another state, and may issue to such certified public accountant a certificate which shall entitle the holder to practice as such certified public accountant and to use the abbreviation "C. P. A." in this state; provided that the state issuing the original certificate grants similar

privileges to the certified public accountants of this state. The fee for such registration shall not exceed twenty-five dollars ($25)."

[4-7] This latter provision was clearly adopted as a matter of comity, since the principles of accounting are the same everywhere and presumably any one qualifying under restrictions equally efficient would be as competent in the one case as in the other. In any event, all persons falling within that class—that is, holding such foreign certificates—would be subject to the same provision, though, as in case of resident applicants or persons not possessing such original certificates, the board is charged with the duty of ascertaining and determining their actual qualifications, dependent upon the thoroughness and efficiency of the system or methods of testing those qualifications. As was said in Allopathic State Board v. Fowler, 50 La. Ann. 1358, 24 South. 809:

"There must, of necessity, be some tribunal to which should be left the decision of those questions primarily, at least. The fact that in some particular instance a board should have improperly rejected an application made it for the issuing of a certificate to practice might possibly give rise in case of abuse to a right of action for correction, but the possibility of such misconduct would certainly not go to the extent of rendering unconstitutional the law under which the board was created."

What has just been said is equally applicable to the contention also made with respect to the provision in section 3 of the act, which, after naming the subjects on which an applicant shall be examined, adds: "And such other branches of knowledge as the board may deem necessary to maintain the highest standard of proficiency in the profession of public accounting." Of course, if it should require examination on subjects entirely foreign to the profession, such as astronomy, civil engineering, etc., the applicant would have his recourse to the courts for relief, as was said with regard to the abuse mentioned in the case last above quoted from; and, if additional appropriate subjects were added, they would unquestionably have to be applicable to all persons.

[8] With regard to the fees prescribed and their disposition, they were undoubtedly intended to cover the expense of making effective the provisions of the law, and are in no sense a tax or contribution for private persons, any more than any other examination or inspection fees under other laws for the enforcement of police regulations.

For the reasons assigned, the judgment appealed from is annulled and set aside, and this case is remanded to be proceeded with according to law and the views herein expressed.

O'NIELL, C. J., concurs in the result, but not in the expression that the practicing of the profession of certified public accountant by an incompetent, "however incompetent" does not jeopardize the safety of any one.