227 So.2d 459 (1969)
McCAFFREY'S FOOD MARKET, INC.
v.
MISSISSIPPI MILK COMMISSION.
No. 45447.
Supreme Court of Mississippi.
October 27, 1969.
*460 Rex K. Jones, Hattiesburg, for appellant.
John L. Hatcher, Cleveland, for appellee.
RODGERS, Justice.
This is an appeal from a decree of the Chancery Court of Forrest County, Mississippi, sustaining an order of the Mississippi Milk Commission in which the Milk Commission suspended the license of appellant, McCaffrey's Food Market, Inc., to sell milk for a period of 120 days or, in lieu thereof, to pay a penalty of $5,000.
The circumstances leading up to the order of the Milk Commission dated November 9, 1967, suspending the license of the appellant have considerable factual background. The history of the organization of the Mississippi Milk Commission is fully related in the case of Mississippi Milk Commission v. Vance, 240 Miss. 814, 129 So.2d 642 (1961). It is sufficient here to point out the original pricing orders of the Commission, adopted in 1960, in which the price difference between regular and premium milk was one cent per quart and two cents per half gallon. The difference between the two products was the butterfat content in the milk. It was fixed at 4.2 per cent. Mr. J.L. McCaffrey, President of the appellant corporation, testified before the hearing at the time of the original hearing. The appellant was among those who appealed from the original order of the Mississippi Milk Commission (hereafter called Commission) as shown by the Commission v. Vance, supra. Thereafter, the butterfat requirement was changed to 4.2 per cent, May 1962. The butterfat content was again changed May 9, 1967, so as to reduce the required butterfat from 4.2 per cent to 4.0 per cent. The effective date of this order was delayed until September 1, 1967, so that the milk dealers would have an opportunity to dispose of the cartons on which the previous butterfat content was printed. The order was again delayed to September 15, 1967, and did not become effective until October 1, 1967. The foregoing order of the Commission of May 9, 1967, is the order on which the appellant bases his complaint.
At this point it will be pointed out that Section 4560-155(d), Mississippi Code 1942 Annotated (Supp. 1968), requires that the Commission establish minimum producer prices at an amount equal to or above the federal-ordered prices promulgated by the U.S. Department of Agriculture. The Commission had, therefore, entered an order as to wholesalers (7.243), and retail milk prices (Order No. VII) in which the Commission provided an automatic escalation of milk prices based upon the changes from time to time set up by the U.S. Department of Agriculture. This relationship *461 is mandatory between the producer and wholesaler prices (Section 4560-155[g], Mississippi Code 1942 Annotated [Supp. 1968]). It is apparent, therefore, that increases or reductions in either category increase or reduce in the other (Section 4560-155[g]).
The basic wholesale and retail prices are based upon a price for producer of $6.25 per hundred weight. This price carries with it a corresponding retail price of $.59 per half gallon for premium milk and $.57 per half gallon for regular milk.
A written notice showing the change in the price of graded milk of one cent per hundred weight was mailed to all licensees ten days prior to the effective date (October 1, 1967).
The appellant complied with the raise in the price of milk of one cent per half gallon, but refused to comply with the order reducing the butterfat content between regular and premium milk which would require an increase of two cents per half gallon.
The record shows that the appellant refused to comply with the order of the Commission changing the price of its milk and sold milk in defiance of the order of the Commission. Whereupon, the Commission, through its executive secretary, acting as chief enforcement officer, instituted proceedings to require observance of the Commission's order. The Commission, upon the hearing, found as a matter of fact that the appellant had violated the rules of the Commission. Appellant's license was suspended for a term of 120 days or payment of $5,000 in lieu of the order suspending appellant's license.
The appellant perfected his appeal to the Chancery Court of Forrest County under the authority found in Section 4560-159, Mississippi Code 1942 Annotated (Supp. 1968). He appealed from the Chancery Court to this Court from an adverse decree in the Chancery Court.
Appellant contends on appeal to this Court that: (1) the fixing of prices of milk by the Mississippi Milk Commission is unconstitutional; (2) the order suspending appellant's license is void because it is based upon a prior void order dated May 3, 1967, which attempted to amend a prior order; (3) the evidence is not sufficient to justify the suspension of the appellant's license; (4) the 1966 act of the legislature re-enacting the continuation of the Mississippi Milk Commission is unconstitutional.

I.
The appellant contends that from a factual standpoint the Mississippi Milk Commission has not benefitted the general welfare of the milk retailer nor the consuming public, and that this fact was not considered by the Commission in changing or amending the price of 4.0 per cent butterfat milk. It contends that the provisions of the act violated the right of private property ownership and unduly restrains the appellant's business. Appellant cited two cases: Town of McCool v. Blaine, 194 Miss. 221, 11 So.2d 801 (1943); Moore v. Grillis, 205 Miss. 865, 39 So.2d 505, 10 A.L.R.2d 1425 (1949). We do not consider these cases applicable on the issue here involved because this Court has passed upon the constitutionality of the Mississippi Milk Commission Act and has, by that opinion, joined the vast majority of the decisions from other jurisdictions in holding that the statutes with reference to the Milk Commission do not violate the State and Federal Constitutions. Mississippi Milk Commission v. Vance et al., 240 Miss. 814, 129 So.2d 642 (1961).
The appellant recognizes that this Court has passed on this issue, but insists that we re-examine our decision in Vance under the light of the after-developed facts. It is argued that the Milk Commission Act is unconstitutional because it protects only one segment of the dairy industry. It is said that "it may protect the producer, but it did so at the expense of the retailer and the consuming public." It is also said that *462 testimony before the legislative committee indicated that the Milk Commission Act is not a proper exercise of the police power of the State since it takes the property of the appellant without due process of law. We are asked to study the legislative report, but we are not inclined to refer to it since the legislature to which this report was made re-enacted the statute with reference to the Commission, in which it says: "All provisions of all price-fixing orders of the Commission shall be presumed to be valid and the burden of proving any invalidity of any provision thereof shall be upon the person asserting the same. * * *" Section 4560-155(i), Mississippi Code 1942 Annotated (Supp. 1968).
The textwriter in 1 Am.Jur.2d Administrative Law § 31, page 834 (1962), has this to say on this subject:
"Unless legislation appears on its face to violate a specific prohibition of the Constitution, there is a strong presumption that the lawmaking body has intended to act within, and not in excess of, its constitutional authority, and every intendment is in favor of the constitutionality of its act. Any doubt, or at least all reasonable doubt, must be resolved in favor of the constitutionality of the act. Whether a legislative act is a statute or a municipal ordinance, it must be presumed to be constitutional unless its repugnancy to the Constitution clearly appears. The burden of proof is on the party asserting the unconstitutionality of an act, that the act is invalid and in conflict with some designated provision of the Constitution, and it is the duty of the court to sustain it unless its validity is established beyond a reasonable doubt."
The argument that the act establishing the Mississippi Milk Commission violates the property rights of the appellant corporation is not well taken, and we feel that this has been well established in the Vance case, supra.
After having re-examined the authorities, we are convinced that the case of Mississippi Milk Commission v. Vance, supra, is dispositive of all constitutional issues as to the police power of Mississippi to enact the legislation with reference to the control of the price and grade of milk within the State of Mississippi.

II.
The next proposition submitted for our consideration is the argument of the appellant that the order of the Commission dated November 9, 1967, suspending the license is void because, it is said, the order changing the butterfat required to be in the milk was changed without notice to the appellant as required by law. The appellant bases his argument upon the language found in Section 4560-146, Mississippi Code 1942 Annotated (Supp. 1968), Laws of 1966, Chapter 227 § 6.
Mr. McCaffrey testified that he did not get a written notice of a change in the original order prior to the hearing May 9, 1967. The executive secretary of the Milk Commission, Mr. W.W. Moffett, Jr., testified that he did not mail notice of the May 9, 1967, hearing to the appellant corporation, but that before the effective date of the order entered May 30, 1967 (effective October 1, 1967) he not only mailed a copy of the change in wholesale and retail prices made on May 30, 1967, but that the president of appellant corporation advised the secretary of the Commission that he would not comply with the order of the Commission.
On August 14, 1967, Mr. McCaffrey, the president of appellant corporation, said in an interview on television that he would not comply with the change in the milk price order, because he felt that the price was much too high in the State of Mississippi.
We are now, therefore, confronted with the construction of Mississippi Milk Commission statutes with reference to the requirement *463 for notice as a right to a constitutional hearing and due process.
We are not entirely devoid of aid in determining the meaning of these statutes. There are certain rules that may be used as guides to aid the Court in the solution of this problem. First, it is well settled that in the interpretation of statutes by the courts that the particular statutes dealing with a special and particular subject will control, as to the terms of the special subject, over the general statutes dealing with like subjects in a general way. 1 Am.Jur.2d Administrative Law § 40, p. 841 (1962); Gulley v. Lumbermen's Mutual Casualty Company, 176 Miss. 388, 166 So. 541, 168 So. 609 (1936); Dunn Construction Company v. Craig, 191 Miss. 682, 2 So.2d 166, 3 So.2d 834 (1941); Price v. Price, 202 Miss. 268, 32 So.2d 124 (1947); Bailey v. Emmich Brothers, 204 Miss. 666, 37 So.2d 797 (1948).
Second, it is also a rule of law that in its effort to construe a statute the courts must seek to ascertain the legislative intent of the statute in question as a whole, taking into consideration each provision of the statute on the entire subject. 1 Am.Jur.2d Administrative Law § 37, p. 839 (1962); Alexander v. Graves, 178 Miss. 583, 173 So. 417 (1937); Scott Building Supply Corporation v. Mississippi State Tax Commission, 235 Miss. 22, 108 So.2d 557 (1959); Kellum v. Johnson, 237 Miss. 580, 115 So.2d 147 (1959); Broadhead v. Monaghan, 238 Miss. 239, 117 So.2d 881 (1960); Bellew v. Dedeaux, 240 Miss. 79, 126 So.2d 249 (1961); State ex rel. Patterson v. Board of Supervisors of Warren County, 233 Miss. 240, 102 So.2d 198 (1958).
One textwriter has put this rule in the following language:
"While the words of a particular section of a statute are the basic data from which to draw the meaning of such section, the statute must be viewed or read as an integrated whole, and the task of the court is to fit, if possible, all parts of a statute into a harmonious whole. The entire statute must be construed together, and effect given to every part, if it can be done without manifestly violating the intent of the legislature. A construction which will render any part of a statute inoperative, superfluous, or meaningless is to be avoided.
"The courts will look to all parts of the statute, including the title, to other statutes, and to the general principles of law, and will assign such meaning to the words of the statute construed as will make them all effective.
"Statutes or statutory sections which relate to the same subject matter or are in pari materia must be read together to determine the mind of the legislature." 1 Am.Jur.2d Administrative Law § 40, pp. 841-842 (1962).
Administrative agencies authorized by law are empowered to act for one or more of the three branches of government: Executive, Legislative or Judicial. One of the methods used by the courts in determining for which branch of government the agency is acting (as between legislative and judicial, quasi-judicial or adjudicatory) is the element of futurity in legislative functions and other acts in retrospection in other functions. The quasi-judicial inquiry declares and enforces liabilities on present or past facts on law already existing. Legislative functions, however, look to the future to make a new rule. 1 Am.Jur.2d Administrative Law § 163, p. 966 (1962).
With these rules before us our problem becomes less burdensome. It will be noted that the Mississippi Milk Commission acts as a quasi-legislative administrative agent to regulate the fluid milk industry of the State of Mississippi (Section 4560-145, Mississippi Code 1942 Annotated [Supp. 1968]), with power to prescribe rules (Section 4560-146, Mississippi Code 1942 Annotated [Supp. 1968]), and power to inspect (Section 4560-147, Mississippi *464 Code 1942 Annotated [Supp. 1968]), issue licenses (Section 4560-148, Mississippi Code 1942 Annotated [Supp. 1968]), and fix prices of milk (Section 4560-155, Mississippi Code 1492 Annotated [Supp. 1968]), all of which are acts upon facts in the present or in the future where a hearing may be had on whether or not rules and prices should be changed.
On the other hand, the Commission also acts as a quasi-judicial administrative agent in that "after" the rules have been established (Section 4560-156, Mississippi Code 1942 Annotated [Supp. 1968]), the Commission may hold a hearing (Section 4560-151, Mississippi Code 1942 Annotated [Supp. 1968]), as to any violations (Section 4560-156, Mississippi Code 1942 Annotated [Supp. 1968]), and may summon witnesses (Section 4560-158, Mississippi Code 1942 Annotated [Supp. 1968]), and an appeal may be taken to the chancery court from judicial hearings to revoke license of licensee (Section 4560-159, Mississippi Code 1942 Annotated [Supp. 1968]).
The issue here is whether or not a hearing had before the Commission in its legislative capacity to fix or change the price of milk or to fix the butterfat content of premium milk, requires that notice must be given by mail to the persons affected, by mailing a copy of the proposed rule fifteen (15) days before the hearing at which the rule is proposed to be changed.
We are of the opinion that the law does not require a mailing of a proposed order to persons affected before the legislative hearing for the following reasons:
First, the required notice to be given to the public of a legislative hearing for the purpose of making a change in the rules fixing the price of milk and designating marketing areas is expressly set out in Section 4560-155(c), Mississippi Code 1942 Annotated [Supp. 1968], and is as follows:
"The Commission shall hold public hearings and hear evidence under oath relative to the prices to be fixed for the sale of milk and the charges for handling, transportation and processing of milk in the area, after first publishing a notice of the hearing and the purposes thereof once each week for three (3) weeks in a newspaper having general circulation in the area. * * *"
In the second place, Section 4560-146, Mississippi Code 1942 Annotated [Supp. 1968], does not say that notice shall be given by mail to interested parties before a legislative hearing is had to change the prices. A careful study of this section will show that the first part of this section gives the Commission authority to make "reasonable rules," provided that before making such rules "and orders" the Commission shall hold a hearing at which all interested parties shall have an opportunity to be heard in support of or in opposition to any proposed rule or order. This part of the act is clearly legislative, where all persons may be heard on the proposed rule both pro and con. There is no adversary proceeding intended and all proceedings look toward the future as to whether or not a change will be made in the status quo up to this point.
The meaning of this section (4560-146) becomes apparent when considered in the light of the two specific statutes with reference to notice to the public upon a "legislative" hearing (Section 4560-155[c], Mississippi Code 1942 Annotated [Supp. 1968]), and Section 4560-156, Mississippi Code 1942 Annotated (Supp. 1968), with reference to a "judicial" hearing upon the violation of a previous rule of the Commission.
Section 4560-146 is clearly legislative in scope when read in pari materia to the specific statutes above mentioned. The meaning of this section is clear when divided into its various parts. Two words, "legislative" and "until," are added to emphasize the clear meaning of the statute.
"The Commission shall have power to prescribe, issue, amend, rescind, publish and enforce all reasonable rules and orders *465 as may be reasonably necessary or appropriate to carry out the provisions of this act, upon the approval of a majority of the full Commission.
"Provided, however, that before making such rules and orders, the Commission shall hold a hearing at which all interested parties shall have opportunity to be heard in support of or in opposition to any proposed rules and orders.
"No rule or order shall be effective until fifteen (15) days after copies of the proposed rule or order shall have been mailed to the persons affected thereby,
"and (until) a notice setting forth either the terms or substance thereof and the time and the place of the (legislative) hearing thereon shall have been published in a newspaper of general circulation in the marketing area affected once each week for three (3) weeks.
"All rules and orders of the Commission shall be filed with its executive secretary and shall be readily available for public inspection and examination during reasonable business hours.
"Any person shall have the right to petition the Commission for issuance, amendment, or repeal of a rule or order.
"A rule or order when made and filed as provided herein shall have the force and effect of law." Mississippi Code 1942 Annotated § 4560-146 [Supp. 1968]. (Above Code section set out in paragraphs for emphasis.)
The meaning of this section of the Code may be seen also from a careful analysis of the words "No rule or order shall be effective" and "mailed to the persons affected." These phrases clearly refer to rules that have been previously established.
The unfortunate use of the words "proposed rule" instead of "promulgated rule" or "established rule" in the clause: "No rule or order shall be effective until fifteen (15) days after copies of the proposed rule or order shall have been mailed to the persons affected thereby, * * *" tends to becloud and confuse the meaning of this Code section (Section 4560-146).
There is another rule of statutory construction that may be used to aid the court in its effort to ascertain the intent of the legislature and to find the meaning of a statute. This rule is expressed by the textwriter in 50 Am.Jur. Statutes § 368, p. 373 (1944), as follows:
"* * * Where the language of a statute is doubtful and the necessity for construction arises, the court may consider whether the legislature could have intended a construction that would be highly injurious, rather than one beneficial and harmless. Under such circumstances, it is presumed that undesirable consequences were not intended; to the contrary, it is presumed that the statute was intended to have the most beneficial operation that the language permits. It is accordingly a reasonable and safe rule of construction to resolve any ambiguity in a statute in favor of a beneficial operation of the law, and a construction of which the statute is fairly susceptible, is favored, which will avoid all objectionable, mischevious, indefensible, wrongful, evil, and injurious consequences. * * *"
With this rule in mind, we are of the opinion that it would be destructive of the overall purpose of the Mississippi Milk Commission statutes to hold that the legislature intended to require the Commission to mail notices to all persons who might become interested in a rule of the Commission "before" it was ascertained at a legislative hearing what sort of rule should be adopted as an order or rule of the Commission.
We hold, therefore, that the appellant was not entitled to a letter or written notice, other than the required published notice, prior to the time when the legislative hearing established a change in the *466 price of the milk and a change in the butterfat content required for premium milk.
We find no merit in the other assignments of error and, from a careful examination of all the points argued in the brief, we are of the opinion that the decree of the chancery court sustaining the order of the Milk Commission in this case should be and is hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.