# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00008-SCT

*HEMPHILL CONSTRUCTION COMPANY, INC.*

*v.*

*CITY OF CLARKSDALE, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/28/2016 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER SOLOP |
| | CURTIS D. BOSCHERT |
| | LYNN PATTON THOMPSON |
| | KIMBERLY TAFT PURDIE |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER SOLOP |
| | LYNN PATTON THOMPSON |
| ATTORNEY FOR APPELLEE: | CURTIS D. BOSCHERT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/16/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The City of Clarksdale ("City") solicited sealed bids for a public construction project. The City received sealed bids from Landmark Construction Company, GCI ("Landmark"), and Hemphill Construction Company, Inc. ("Hemphill"). When unsealed, both bids exceeded the project's allocated funds by more than ten percent. Rather than rebidding the contract, the City conditionally awarded a contract to Landmark, dependent upon the City's obtaining additional public funds to match Landmark's bid. The City's actions were not

provided for in the public bidding laws. Accordingly, we reverse the judgment of the Coahoma County Circuit Court and remand the case to the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. In February 2015, the City issued an Advertisement for Bids for the 2014 Community Development Block Grant ("CDBG") Wastewater Improvements – Contract #1 (Equipment and Controls). The Advertisement called for the City to receive written, sealed bids at the Clarksdale Public Utilities Commission ("CPU") up to and until 1:30 p.m. on May 27, 2015, at which time any bids would be opened publicly and would be considered by the City at the next meeting of the Board of Mayor and Commissioners of the City.

¶3. The sealed bids were opened on May 27, 2015, and the Certified Tabulation of Bids revealed Landmark's lump-sum bid was $924,527 and Hemphill's lump-sum bid was $953,800.

¶4. Twelve days later, the City held a meeting. The June 8, 2015, minutes of the City reflect that Bill Coker, the City's grant consultant on the project, presented the Certified Tabulation of Bids, which showed that Landmark's bid, combined with the lowest bid on Contract 2: Solid Waste–Denali Water Solutions, LLC– exceeded the project budget by more than ten percent, specifically, $216,182.[1] Coker advised the City that the Mississippi Development Authority would consider increasing CDBG funds by $75,000, and that the Clarksdale Public Utilities Commission ("CPU") would increase its matching funds by an

---

[1] The CDBG Wastewater Treatment Improvements Project was broken into two contracts: Contract # 1: Equipment and Controls, and Contract # 2: Solid Waste. This appeal concerns Contract # 1 only.

additional $141,182. Coker recommended that the City accept the lowest bids for each Contract, contingent upon the funding increase. The City then accepted Coker's recommendation and decided to award Contract # 1 conditionally to Landmark, dependent upon the aforementioned increased funding. The minutes of the City reflect that there had been no consideration of the City's statutory authority to accept either bid.

¶5. On June 19, Hemphill protested the award to Landmark. The City responded to Hemphill on July 9, stating that the City disputed Hemphill's claims, and advised that the contract had been awarded to Landmark.

¶6. On July 13, Coker informed the City that the additional CDBG and CPU funding had been acquired. The City then granted the Mayor permission to execute the Mississippi Development Authority Modification on Wastewater Treatment Plant Contract, which modified the budget by increasing it to $216,182. That same day, the City authorized the Mayor to execute a Notice of Award to Landmark.

¶7. Hemphill filed a Bill of Exceptions in the Circuit Court of Coahoma County pursuant to Mississippi Code Section 11-51-75 (Rev. 2012), appealing the City's July 13 decision to award the contract to Landmark. Hemphill argued, *inter alia*,[2] that the City had violated Mississippi Code Section 31-7-13 by awarding the contract to Landmark, because the bids submitted exceeded the allocated funds by more than ten percent. Mississippi Code Section 31-7-13(d)(iv) provides that:

---

[2] Hemphill also argued that it met the requirements for preference under Section 3 of the Housing and Urban Development Act of 1968; therefore, the City was required to award Hemphill the contract. The circuit court found that Hemphill was not entitled to Section 3 preference. Hemphill does not appeal that determination.

if the lowest and best bid is not more than ten percent (10%) above the amount of funds *allocated* for a public construction or renovation project, then the agency or governing authority shall be permitted to *negotiate* with the lowest bidder in order to *enter into a contract* for an amount not to exceed the funds *allocated*.

Miss. Code Ann. § 31-7-13(d)(iv) (Supp. 2017) (emphasis added). Hemphill argued that the City had violated this statute by securing additional funding after the bids were opened because the bids were more than ten percent of the total budget, and, therefore, the City could not negotiate or enter into a contract with Landmark. Hemphill also argued that, even though there is no precise caselaw addressing Section 31-7-13, there are Attorney General public-bidding opinions advising municipalities that they are prohibited from securing additional funds after bids have been opened to negotiate or enter into a contract with a bidder whose bid exceeds the project funds by more than ten percent. *See* Op. Miss. Att'y Gen. 2012-00195 (April 20, 2012); Op. Miss. Att'y Gen. 98-0764 (Dec. 23, 1998). Finally, Hemphill argued that the City's decision to award the contract to Landmark was arbitrary and capricious.

¶8.     After a hearing, the circuit court held that the City's award of the project to Landmark did not violate state law, finding that:

> [t]he purpose of [Mississippi Code Section] 31-7-13(d)(iv) is to allow a governmental entity to negotiate with the lowest bidder to bring the bid within the amount of funds allocated. In this case Clarksdale did not negotiate with Landmark. Clarksdale obtained additional funds from the MDA and the CPUC to meet the lowest bid. The bid laws do not prohibit this, accordingly, Clarksdale's actions were not improper.
>
> . . .

4

From a policy perspective, the State Legislature has left the decision on when to rebid construction projects with the local governing authorities. [Mississippi Code Section] 31-7-13 does not prohibit Clarksdale from obtaining or allocating additional funds to meet the lowest bid and since it does not, Clarksdale's award of the Contract to Landmark was not improper.

¶9.     It is from this Order that Hemphill appeals.  Hemphill requests that this Court reverse and remand for a trial on damages.

## ISSUES

¶10.    Hemphill frames the issue on appeal as follows:

Whether the circuit court erred in not finding that Clarksdale violated Mississippi Code Annotated Section 31-7-13 when the bids submitted by Landmark and Hemphill in response to its Advertisement for Bids exceeded the allocated/budgeted funds by more than ten percent (10%) and rather than rejecting these bids and re-advertising, Clarksdale elected to secure additional funding and awarded the contract to Landmark.

¶11.    Hemphill also argues that the City's decision to award the contract to Landmark was arbitrary and capricious.  The first issue is case-dispositive.

## STANDARD OF REVIEW

¶12.    "Our analysis begins with a determination of the scope of review. Municipalities have only such powers as are expressly granted or necessarily implied by statutes.  Such powers are to be construed most strongly against an asserted right, if the right is not clearly given." *Hemphill Constr. Co., Inc. v. City of Laurel*, 760 So. 2d 720, 723 (Miss. 2000) (citing *City of Jackson v. McMurry*, 288 So. 2d 23 (Miss. 1974)).  When the public bid laws do not expressly provide for the action taken by the municipality, the question becomes whether such action is "necessarily implied." *Id.*  Only if the municipality's action was necessarily implied by the statute is the municipality's action entitled to deference. *Id.*

¶13. For questions of law, a municipal board's decision is reviewed de novo. *Nelson v. City of Horn Lake ex rel. Bd. of Aldermen*, 968 So. 2d 938, 942 (Miss. 2007) (citing *A & F Props., LLC v. Madison Cty. Bd. of Supervisors*, 933 So. 2d 296, 300 (Miss. 2006)). "Likewise, this Court applies a de novo standard of review to matters regarding statutory interpretation." *Weiner v. Meredith*, 943 So. 2d 692, 694 (Miss. 2006).

## DISCUSSION

¶14. The public-purchase laws concerning bidding requirements neither expressly grant, nor clearly give, any municipality the power to award a contract, post-bid-opening, to a bidder whose bid exceeded the allocated[3] project funds by more than ten percent, nor the power to procure additional public funds, post-bid-opening, to award the contract to such bidder. Since there is no express grant or clearly given authority, the City is left only with the dubious argument that its *ultra vires* acts were necessarily implied by statute.

> The term "necessarily implied" is somewhat restrictive. "Necessarily implied" refers to a logical necessity and means that no other interpretation is permitted by the words of the instrument construed, and it has been defined as an implication which yields so strong a probability of intent that any intention to the contrary cannot be supposed leaving no room for doubt.

*Miss. Pub. Serv. Comm'n v. Columbus & Greenville Ry. Co.*, 573 So. 2d 1343, 1346 (Miss. 1990) (citing *Strong v. Bostick*, 420 So. 2d 1356, 1361 (Miss. 1982)). Such an argument is untenable, for it cannot be argued fairly that its acts necessarily were implied by statute.

¶15. The City allocated public funds to finance a public construction project. The City then solicited sealed bids for the project. Landmark and Hemphill submitted sealed bids. It is

---

[3] *Allocate*: "1. To set aside for a special purpose. 2. To distribute according to plan: ALLOT." Webster's II New College Dictionary 30 (2001).

undisputed that, after the bids were unsealed, both bids exceeded the original allocated funds by more than ten percent. Therefore, the City was without statutory authority under Section 31-7-13 to award either bid. Notwithstanding, the City sought and procured additional public funds for the project, requiring Landmark to hold its bid open, contingent upon the City's receipt of additional funding. The City then allotted the original allocated funds, *plus* the newly procured public funds, to the project and accepted Landmark's bid. These steps, taken after the bids were opened, frustrate the powers expressly granted, clearly given, or necessarily implied in the public-purchasing laws and render the ten-percent limitation not only superfluous, but meaningless. "A construction which will render any part of a statute inoperative, superfluous, or meaningless is to be avoided." ***McCaffrey's Food Market, Inc. v. Miss. Milk Comm'n***, 227 So. 2d 459, 463 (Miss. 1969).

¶16.    Mississippi Code Section 31-7-13(d)(iv) specifically provides that, if the lowest and best bid is not more than ten percent above the amount of funds *allocated* for a public construction project, then governing authority shall be permitted to *negotiate* with the lowest bidder in order to *enter into a contract* for an amount not to exceed the funds *allocated*.

¶17.    In considering a statute passed by the Legislature,

> the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

7

*Miss. Ins. Guar. Ass'n v. Cole ex rel. Dillon*, 954 So. 2d 407, 412-13 (Miss. 2007) (quoting

*Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 154 (Miss. 2006)) (internal alterations

omitted).

¶18.    Mississippi Code Section 31-7-13 (d)(iv) is unambiguous.  In its plainest terms, the

statute provides that an agency or governing authority (here, the City) shall be permitted to

"*negotiate . . . to enter into a contract*" if the "bid is not more than ten percent (10%) above

the amount of funds *allocated*" for the project. (Emphasis added.)  Three words/phrases in

this statute are examined: (1) "funds allocated," (2) "negotiate," and (3) "enter into a

contract."  Each word and phrase must be read together and given effect.  *See Morgan v.*

*State ex rel. Dist. Attorney*, 44 So. 2d 45, 49 (Miss. 1950) ("[E]very word, sentence, phrase,

or clause in a statute must be given a meaning, if possible, and this rule is not avoided by the

use of the aid to statutory construction, 'ejusdem generis.'"). *See also McCaffrey's Food*

*Market, Inc.*, 227 So. 2d at 463 (statutes "must be viewed or read as an integrated whole, and

the task of the court is to fit, if possible, all parts of a statute into a harmonious whole.")

¶19.    The first phrase, "funds allocated," is included twice in the statute.  The term "funds

allocated" is in the past tense and can only refer to funds that already have been allocated,

not funds to allot in the future.  The City's authority to "negotiate . . . to enter into a contract"

was limited by the amounts originally allocated for the project, *i.e.*, before the bids were

opened.  Based on the plain and precise language of the statute, the City was without

statutory authority to negotiate, conditionally accept, or enter into a contract with either

Landmark or Hemphill based on the amount of funds that the City had allocat*ed* when the

bids were opened. Both bids exceeded the funds allocat*ed* for the project by more than ten percent, both when the bids were made and later opened.

¶20. Hemphill submitted to the trial court an Attorney General public-bidding opinion that recognized this principle. While Attorney General opinions are not binding on this Court, "they certainly are useful in offering guidance to the Court." *Jones Cty. Sch. Dist. v. Dep't of Revenue*, 111 So. 3d 588, 602 (Miss. 2013) (citing *Shelter Mut. Ins. Co. v. Dale*, 914 So. 2d 698, 703 (Miss. 2005)) (citations omitted). In 2012, the Attorney General was asked whether the amount of funds allocated for a project may be determined after bids have been received. The Attorney General opined that:

> a determination as to the amount of the funds allocated, as contemplated in Section 31-7-13(d)(iv), is a factual determination to be made by the public entity seeking to procure the construction contract. While there is no specific statutory provision directing a public entity as to whether the determination is to be made prior to the solicitation of bids or may be made after bids are received, such determination as to the amount of funds available for the procurement of the proposed construction contract should be made *prior* to the solicitation of bids. In fact, the term "allocated" is in the past tense and presumes that the allocation has already been completed.

Op. Miss. Att'y Gen. 2012-00195 (April 20, 2012) (emphasis added). The Attorney General further opined that only the funds that the public entity contemplated using for the procurement of the construction contract may be considered to trigger its authority to negotiate with the lowest and best bidder under Mississippi Code Section 31-7-13(d)(iv).

¶21. The City unconvincingly counters that Mississippi Code Section 31-7-13 applies only when the governing authority "negotiates" with the lowest bidder. The City argues that Mississippi Code Section 31-7-13(d)(iv) does not apply in this case because it "did not

9

negotiate with Landmark nor did it change the plans and specifications set forth in the Advertisement to allow for negotiations." The City's actions belie its words.

¶22. Clarksdale conditionally accepted Landmark's bid before awarding Landmark the contract. Clarksdale's action required Landmark to keep its bid open if and until (1) Clarksdale could acquire additional CDBG match funds, (2) Clarksdale could acquire additional CPU match funds, (3) approval was given by the Mississippi Development Authority, and (4) the City attorney reviewed and approved the transaction. Despite the delay created by the City's conditional acceptance, Landmark reciprocated by leaving its bid open for an uncertain time. While the City argues that it did not negotiate with Landmark, one need not modify a construction plan or change advertisement specifications to "negotiate." Indeed, "negotiate" is defined as follows: "to transact business," "to confer with another so as to come to terms or reach an agreement," or "to settle or arrange by conferring or discussing." *Negotiate*, Webster's II New College Dictionary 732 (2001).

¶23. Assuming *arguendo* that the City did not negotiate with Landmark, the applicable statute states that a governing authority "shall be permitted to negotiate with the lowest bidder *in order to enter into a contract for an amount not to exceed the funds allocated*." Miss. Code Ann. § 31-7-13(d)(iv) (emphasis added). In reading the statute "as an integrated whole,"[4] as we must, it is abundantly clear that the statute does not apply exclusively to negotiation authority, for the authority to "negotiate" is predicated on the authority also to "enter into a contract." Miss. Code Ann. § 31-17-3(d)(iv). Because both bids exceeded ten

---

[4] *McCaffrey's Food Market, Inc.*, 227 So. 2d at 463.

percent of the funds allocated, the City had no authority to "negotiate . . . to enter into a contract" with either bidder.

¶24. Next, the City argues that, "if the Legislature did not want a municipality to have the option to obtain additional funding, it would have prohibited it." The City then asserts that "it is reasonable to *infer*" that it had such statutory authority. Such an argument exposes the invalidity of the actions taken by the City. The City did *not* have authority to procure additional funds post-bid-opening, for municipal powers "are to be construed most strongly *against* an asserted right, *if the right is not clearly given*." **Hemphill Constr. Co., Inc**, 760 So. 2d at 723. The City unconvincingly urges this Court to hold the opposite, arguing that, because the right to procure additional funds post-bid-opening was not clearly given, it is reasonable to infer it had such authority. Such a conclusion directly conflicts with this Court's precedent and the body of statutory law that grants municipal entities their public-purchasing authority.

¶25. Finally, the City argues that its *ultra vires* acts were consistent with the principles behind the public-purchasing laws because it awarded the public contract "to the lowest and best bidder." This Court previously has rejected this very same argument. In **Hemphill Construction Co. Inc.**, Harold West Contractors, Inc., ("West") submitted the lowest bid for a construction project and later was allowed to amend its bid price after the bids already had been opened. **Hemphill**, 760 So. 2d at 722. West was the lowest bidder before and after the bid amendment, so the City of Laurel chose to award the contract to West. **Id.** at 723. The losing bidder (Hemphill) appealed, arguing that Laurel was not authorized by statute to allow

11

a bid to be amended post-opening. *Id.* Laurel responded that, because the contract recipient ultimately was the lowest bidder both before and after the bid correction, the overall purpose (*i.e.*, "spirit") of the public-bidding laws was met in those circumstances. *Id.* at 724. This Court rejected Laurel's argument, holding that its "decision [was] not intended to impute any culpable wrongdoing by the City of Laurel or West." *Id.* "While the City may be comfortable with its decision in this instance, however, the broader public will lose in the long run if the public purchase laws are circumvented." *Id.*

¶26. The foundational principles underlying the statutory requirements of competitive bidding negate any inference that the City could obtain additional public funds post-bid opening. Such a concocted procedure does not "protect the public from collusive contracts," or "prevent favoritism, fraud, extravagance, and improvidence." *Id.* Furthermore, it does not "promote actual, honest, and effective competition" and it certainly does not allow contracts to "be secured at the lowest cost to taxpayers." *Id.* Indeed, the City increased the expenditure of public funds by more than $200,000. The City's argument that "the public's interests were protected because the contract was awarded to the lowest bidder," is unavailing. As this Court stated in *Hemphill Construction Co., Inc.*, "the broader public will lose in the long run if the public purchase laws are circumvented." *Id.* at 724.

## CONCLUSION

¶27. The City was without statutory authority to procure additional public funds post-bid-opening to award the contract to Landmark, for its bid exceeded ten percent of the public funds allocated for the project. We hold that the circuit court erred in affirming the City's

12

decision to award the contract to Landmark. Accordingly, the Court reverses the judgment of the Coahoma County Circuit Court and remands the case for proceedings consistent with this opinion.

¶28. **REVERSED AND REMANDED.**

**WALLER, C.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND KING, J.**

**ISHEE, JUSTICE, DISSENTING:**

¶29. The majority holds that Mississippi Code Section 31-7-13(d)(iv) precludes a governing authority from procuring additional funding for a public-construction project after the opening of sealed bids. (Maj. Op. ¶ 27). I would find there to be no such preclusion. Accordingly, I must respectfully dissent.

¶30. Section 31-7-13, Hemphill argues (and the majority agrees) required the City to reject both bids because they both were ten percent more than the original amount allocated for the project. But Clarksdale argues that, while the text of Section 31-7-13(d)(iv) grants a municipality the discretion to negotiate under certain circumstances, it does nothing to prevent a governing authority from securing additional funding. After examining the text of the statute, I agree.

¶31. My agreement with Clarksdale's position is based on the text of the provision, which provides that if the bid is not more than ten percent higher than the amount (originally) allocated, a governing authority "*shall be permitted to negotiate* with the lowest bidder in order to enter into a contract for an amount not to exceed the funds allocated." Miss. Code

13

Ann. § 31-7-13(d)(iv) (Supp. 2017) (emphasis added). A plain reading of the text confirms that this statute applies only when the governing authority *negotiates* with the lowest bidder. To negotiate means "[t]o communicate with another party for the purpose of reaching an understanding[,]" or "[t]o bring about by discussion or bargaining[.]" *Negotiate*, Black's Law Dictionary (10th ed. 2014). Here, nothing in the record indicates that the governing authority (the City) undertook any action which resembled "negotiations" with Hemphill or Landmark. Neither discussions nor bargaining took place with either party post-bid; the City simply obtained funding to meet the lowest bid.

¶32. Absent from the text of the statute, however, is any language which prohibits a governing authority from obtaining additional funding to pay for a public project. To be sure, when reading the text of Section 31-7-13(d)(iv), it is reasonable to infer that if all of the submitted bids exceed the funding a governing authority possesses for a project, the governing authority in that instance has no choice but to reject all bids, as it simply could not pay the price of the bid. However, if all bids exceed the budgeted amount for a project, but the governing authority can procure additional funding, there is simply nothing in the text of the statute that prohibits it from doing so.

¶33. In support of its finding that Section 31-7-13(d)(iv) precluded Clarksdale from obtaining additional funding, the majority reasons that the allocated amount is to be determined before bid solicitation. (Maj. Op. ¶ 20). In doing so, the majority cites an opinion of the Attorney General that—ironically enough—states that, while the funding determination *should* be made before bids are solicited, "there is *no specific statutory*

14

*provision* directing a public entity as to whether the determination is to be made prior to the solicitation of bids or may be made after bids are received." Op. Miss. Att'y Gen. 2012-00195 (April 20, 2012) (emphasis added). So, while that Attorney General's opinion suggests that it may be a wise and preferable policy to require such determination before solicitation, it also simultaneously reinforces my position that no statute demands such.

¶34. For the reasons stated above, in the end, I would affirm the City's award of the contract to Landmark. I respectfully dissent.

**KITCHENS, P.J., AND KING, J., JOIN THIS OPINION.**