## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01048-COA

**HAROLD NEWELL D/B/A A-ABSOLUTE BAIL BONDING COMPANY**    APPELLANT

**v.**

**STATE OF MISSISSIPPI**    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/18/2018 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER EDWARD SMITH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JASON L. DAVIS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - OTHER |
| DISPOSITION: | REVERSED, RENDERED AND REMANDED - 07/23/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Although not personally served, a bail bondsman was held liable for a defendant who skipped trial. The surety's former agent was served in his stead. Because the Legislature has expressly excluded this act as a proper form of service, we reverse, render, and remand.

## PROCEDURAL HISTORY

¶2. Weary of a world where suspects in a criminal case would be detained for weeks or months without seeing a magistrate or facing trial, an intrepid and innovative band of thinkers created a guarantee of fair treatment. This is why the Eighth Amendment to the

federal Constitution prohibits excessive bail. U.S. Const. amend. VIII.

¶3. As explained some years later, "[t]his traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Bail was not just quintessentially American but also vital to our system of justice: "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id*.

¶4. But bail literally comes at a price, so society developed methods of paying for it. "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." *Id*. "Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused." *Id*. at 5.

¶5. Which brings us to A-Absolute Bonding Company and a bond in Attala County. Antonio Grant had been indicted for armed robbery and possession of a firearm by a convicted felon. Just as our system is supposed to work, the trial court allowed Mr. Grant bail before trial. A-Absolute Bonds guaranteed Mr. Grant would appear at trial via an appearance bond for $30,000. The company, owned and operated by Harold Newell, had an agent named Taluna Hunt, and she wrote the bond.

¶6. For reasons beyond the reach of this decision, the defendant did not appear for trial. The trial court issued a bench warrant for his arrest. The trial court also issued a judgment

nisi[1] against his sureties, namely Newell and Hunt. The trial court found that the $30,000 bond was forfeited; it also gave the duo ninety days to explain why the judgment "should not be made final." This gave the sureties a time period to cure the failure to appear.

¶7.     By order of the trial court, the sureties were to be given formal service of process of scire facias—the name for a summons, or "to make known." *See generally* Miss. Code Ann. § 99-5-25 (Rev. 2015) (determining that "[t]he purpose of bail is to guarantee appearance and a bail bond shall not be forfeited for any other reason" and setting out the process outlined above). Service of process is critical in this situation because "[i]f the surety produces the defendant or provides to the court reasonable mitigating circumstances" during this time, "then the forfeiture shall not be made final." § 99-5-25(1)(c).

¶8.     While Hunt was not the surety herself, she had signed as Newell's agent for the bond. The deputy sheriff served her with the judgment nisi. Newell would later swear under oath that he was not served personally. Neither appeared within the time frame, and so the judgment became final.

¶9.     A few months later, Newell sought to set aside the judgment nisi, arguing that he was not served within ten working days of the entry of the judgment as required by the law. § 99-5-25(1)(b). The trial court found that Hunt, his agent, had been served. As a result, a final judgment was ordered against Newell and Hunt for the $30,000.

¶10.    The amount was not paid, and so the trial court ordered that the amount should be taken out of Newell's qualification bond filed at the Department of Insurance, which was

---

[1] This is a show cause order to explain the failure to appear.

required for him to operate as a bondsman.  The trial court also revoked the right of Newell and A-Absolute Bail Bonding "to act as surety on any further bail. . . ."

¶11.    Newell resumed his attack on the judgment nisi and paid the money.  After paying, he asked for the return of his status as bail bondsman.  While the trial court refused to set aside the judgment nisi, it did set aside the revocation of the qualification bond and allowed Newell to be reinstated.

¶12.    Newell appealed, asking for a determination that he was never properly served, and for a refund of the forfeited $30,000.  The State did not file a brief but informed the Supreme Court Clerk via letter that it saw this as a civil matter, and not a criminal one, and so "diverted the matter by way of mailings . . . to both the Fifth Circuit Court District Attorney's office as well as the Attala County Prosecutor."

¶13.    The District Attorney's office filed a letter stating that it believed the case fell "under the province of the County Attorney."  The County Attorney was issued an appearance form but neither appeared nor filed a brief.  The Clerk properly informed the County Attorney that the time to file a brief had elapsed, and if it was later filed it could be stricken per Mississippi Rule of Appellate Procedure 31.  In the end, no brief was filed on behalf of the State or any of its subdivisions.

## DISCUSSION

¶14.    As the facts are not in dispute, the entirety of this case turns upon whether the service of process on the bail bondsman's agent was sufficient.  The Legislature specifically authorizes bail bonds and bondsmen in the Code.  It defines the various players in the field,

4

such as professional bail agent, soliciting bail agent, a bail enforcement agent, and a surety—the position Harold Newell occupied. *See generally* Miss. Code Ann. § 83-39-1 (Rev. 2011).

¶15. "'Surety' means the insurer or personal surety agent guaranteeing the bail bond and *for the purpose of process does not mean the agent of such insurer or personal surety agent*." § 83-39-1(i) (emphasis added).

¶16. It is a cornerstone of law that we should follow the clearly expressed intent of the Legislature. No principle is more firmly established, or rests on more secure foundations, than the rule that declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the Legislature shall be deemed to have intended to mean what it has plainly expressed, and, consequently, no room is left for construction in the application of such a law. *Wilson v. Yazoo & M.V.R. Co.*, 192 Miss. 424, 6 So. 2d 313, 314 (1942); *see also Lewis v. Hinds Cty. Circuit Court*, 158 So. 3d 1117, 1122 (¶13) (Miss. 2015).

¶17. The Legislature has defined the role of a surety. In that definition it affirmatively declared that sureties could not be served with process through an agent. Here, Newell was the surety, and Hunt was the agent. He swore under oath that he was not served personally, and the service of process in the record before us shows that only Hunt was served personally. A plain application of the law requires us to reverse and render.[2]

¶18. Since the State failed to filed an opposing brief, no alternative to reversal was

---

[2] Even if the law did not expressly preclude Newell from being served via his agent, the surety's testimony was that the agent no longer worked for him (and had not for over a year).

proposed to us on appeal. *See* M.R.A.P. 31(d) (setting out the consequences of the failure to file a brief by the appellee); *Miller v. Pannell*, 815 So. 2d 1117, 1119 (¶7) (Miss. 2002) (In certain cases the Court can "take the appellees' failure to file a brief as a confession of error and reverse.").

¶19.　As a final point, there was some discussion in the trial court hearing about an Opinion by the Attorney General interpreting the statute above regarding the ability of an agent to receive service of process. The annotations to the Code suggest that an agent might be properly served as a result of this Opinion.

¶20.　The Opinions of the Attorney General are useful to this Court, but they are not binding precedent. *Hemphill Constr. Co. Inc. v. City of Clarksdale*, 250 So. 3d 1258, 1263 (¶20) (Miss. 2018). The relevant Opinion states that "[i]t is the opinion of this office that a scire facias may be personally served on a limited surety agent and that process will be binding on the insurer represented by that agent." Mississippi Attorney General Opinion, 1998-0672, 1998 WL 889838, *Scott*, at *2 (Nov. 6, 1998). The Opinion then quotes the entire definition statute as authority for this premise.

¶21.　Yet the Opinion stops its quotation right before the applicable subsection for this case, which is subsection (i). This subsection was not adopted until 2003. Miss. Laws 2003 ch. 452, H.B. 619. Service of process upon an actual agent for a surety could have been proper until the effective date of the law on July 1, 2003. Leaving aside the question of whether even the agent in this case could have been properly served, process was not accomplished until September of 2017, or about 14 years after it was expressly prohibited by the

6

Legislature.

¶22.  The defendant himself pointed this out during redirect in the hearing, testifying that he believed the Opinion was outdated due to a change in law.  He was right.  The law was changed after the Opinion, and therefore the Opinion is outdated and does not apply.

**CONCLUSION**

¶23.  Because the Legislature has affirmatively declared an agent cannot be served to achieve service of process on a bail bondsman, and that was the only process in the court below, we reverse and render.  In rendering, we order the forfeited $30,000 returned to Newell.

¶24.  But this ruling does not end the proceedings.  Newell remains as surety for the defendant Grant.  We remand for proper process of scire facias per section 99-5-25 to be had on Newell, at which point the trial court can proceed in accordance with the applicable law.

¶25.  **REVERSED, RENDERED AND REMANDED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.  BARNES, C.J., AND TINDELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**